UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Criminal No. 19-cr-20492 - 4

v.

                                            HON. MARK A. GOLDSMITH

D-4 DEVON MANQUIL NEWBY,
    a/k/a "Quil,"

        Defendant.
_____/

**ORDER**
**DENYING MOTION FOR PRETRIAL RELEASE (Dkt. 195)**

This matter comes before the Court on Defendant Devon Newby's motion for pretrial release (Dkt. 195). Newby is charged in a Second Superseding Indictment with conspiracy to commit Hobbs Act robberies in violation of 18 U.S.C. § 1951(a) (Dkt. 76). On August 22, 2019, Newby consented to detention pending trial (Dkt. 52). On October 13, 2020, the Court held a hearing regarding Newby's motion. For the reasons stated below, the Court denies Newby's motion.

        **I.      BACKROUND**

The FBI has been investigating a string of "smash and grab" robberies at jewelry stores since August 2018. During these robberies, the robbers used hand-held sledgehammers and hammers to break the jewelry stores' glass display cases or intimidate the stores' employees to unlock the display cases. The robbers then took loose diamonds, rings, jewelry, and other items of value. Over thirty such instances—all fitting similar description—have occurred in the Eastern and Western Districts of Michigan, as well as in Illinois, Indiana, Ohio, Pennsylvania, and as far away as Alabama, Florida, Louisiana, New Hampshire, and South Carolina. The investigation has

revealed that many of the robberies were connected, planned, coordinated, and conducted by individuals living in Detroit, Michigan.

The FBI learned that for each of these robberies, typically two groups would drive to a robbery location from Detroit in two separate vehicles, one in a "clean" vehicle that was either properly registered or lawfully rented, and one in a "burner" or stolen vehicle, which could be abandoned immediately after the robberies. During these robberies, one or two individuals would act as lookouts, while others would enter the store. Once inside, the robbers used sledgehammers to break glass enclosures and then take diamonds and other jewelry. After abandoning the stolen car, the group would travel back to Detroit in the clean vehicle.

The Government alleges that Newby played an active role in a number of these robberies. After his arrest for an attempted Jacksonville, Florida robbery, Newby gave a post-<u>Miranda</u> statement to the local police agency. Newby Stmt., Exs. A & B to Gov't Resp. (filed under seal in the traditional manner). In his statement, Newby admitted to participating in the conspiracy by acting as the lookout in four robberies and in two attempted robberies in multiple states throughout the country. Newby also admitted that as the lookout, he was responsible for collecting and transporting the stolen merchandise back to Michigan, the value of which exceeded many hundreds of thousands of dollars. The Government proffered additional evidence linking Newby's phone to the cellphone towers in the vicinity of two additional robberies, and two more attempted robberies. Additionally, the Government proffered evidence which purports to show that on the day of the Jacksonville robbery, Newby purchased materials and supplies used in the robbery of a Jared's jewelry store.

## II.     ANALYSIS

Under "the Bail Reform Act, 18 U.S.C. §3142, . . . a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably

2

assure the appearance of the person as required and the safety of any other person and the community[.]'" United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)).

After conducting a hearing on October 13, 2020, under the Bail Reform Act, 18 U.S.C. §3142 (f), and considering the exhibits, filings, and arguments of counsel, the Court concludes that the established facts require Newby be detained pending trial based upon the following.

### A. Findings – Factors To Be Considered

The Court has considered the following factors under Section 3142(g): (1) the nature and circumstances of the offense; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the danger and seriousness of the danger to any person or the community should the defendant be released, and has determined each factor weighs in favor of detention.

1. **The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug**.

Newby has been indicted in a conspiracy to interfere with commerce by robbery or threatened force, violence, or fear of physical injury ("Hobbs Act Robbery"). 18 U.S.C. §1951(a)). Newby has been charged with a serious crime and faces a twenty-year statutory maximum sentence. The indictment alleges, and the Government presented evidence during the hearing and through proffered information, that Newby engaged and was involved in many violent robberies and attempted robberies of Jared's Jewelry Stores throughout the United States. Newby played an important role as a member of a sophisticated conspiracy aimed at stealing diamonds from jewelry stores across the country since 2018.

The Government proffered evidence that prior to the Jacksonville robbery, the FBI had obtained a search warrant to monitor the location information of Newby's phone and to tract his movements. The information revealed that Newby and his associates left Detroit in the late

evening of Sunday, June 9, or in the early morning of Monday, June 10, 2019.  They took a circuitous route to Florida via South Carolina.  In South Carolina, Newby was captured by surveillance video the morning of the robbery at a Walmart purchasing items to be used in the robbery.  Their travel to South Carolina was also confirmed by items that were found during the search of the "getaway car," driven by Newby and a stolen car that was recovered by the Jacksonville, Florida police in the parking lot of Jared's Galleria of Jewelry.  Both cars contained evidence linking Newby to the robbery attempt.  In Newby's "getaway car," the police recovered a sales receipt from a Walmart store located in Walterboro, South Carolina.

The robbers struck Jared's Galleria of Jewelry near Jacksonville, Florida, at approximately 6:50 PM. on June 11, 2019.  Although the store was open for business, the front doors to the store were locked.  Newby, as the lookout, was in phone contact with the co-conspirators and watched as one of the three robbers, Co-Defendant Tristan Murphy, was let into the store after he knocked and asked if he could use the restroom.  Approximately two minutes later, the other two robbers, wearing hoods, began pulling on interior locked doors.  They pulled hard enough that the doors opened.  Once inside, one of Newby's co-defendants chased after an employee who was trying to get away and hide behind a display counter.  He grabbed the employee, knocking her over onto the floor, dragging her by her shirt across the floor, before pulling her to her feet—forcing her to another area of the store.  Before the co-defendants could take any of the jewelry, Jacksonville County Florida Sheriff's Officers arrived on scene.  Newby, waiting in a getaway car, fled the scene. Newby was the sole occupant of the vehicle when later stopped in Georgia and placed under arrest.  His phone and the evidence linking him to the robbery were recovered from the car.

By their very nature, the robberies were designed to intimidate, and to strike fear in the employees and store customers alike.  In his post-<u>Miranda</u> statement, Newby admitted to participating not just in that robbery attempt, but also to robberies in: Overland Park, Kansas

(March 2019); Burnsville, Minnesota (April 2019); Columbia, South Carolina (April 2019); Baton Rouge, Louisiana (May 2019); and two attempted robberies in Virginia and North Carolina. The Government proffered evidence linking Newby's phone to two additional robberies in Chattanooga, Tennessee (February 2019) and Hoover, Alabama (February 2019), as well as another attempt in New Jersey.

The breadth of Newby's involvement in this conspiracy is disturbing. On at least nine occasions, Newby was personally involved in a plan to rob a jewelry store. On each of those occasions he participated in the preparation, planning, and execution of the robberies. Indeed, every time he left the state of Michigan, it was his intent to terrorize his victims, so that he could steal from them. The Government proffered still photographs from video surveillance depicting the violent and forceful nature of just one of the numerous robberies in which Newby participated. Each of the other robberies potentially had victims who were just as terrified as the one shown to the Court.

Also alarming is the frequency with which the robberies occurred. The prolific nature of the operation is best displayed by the fact that multiple arrests did little to slow the robberies. If anything, social media evidence suggests that arrests and attention from the FBI only emboldened the crew. For example, only four days after Newby and his associates were arrested, D-2 Kai Rivers, using the Instagram account "doitfor_diamond," reposted a message, originally posted by "theonlyjolly."[1] The post referenced "losing soldiers," but stated that "y'all can't count us out #teambag." Three days later, on June 18, 2019, another robbery took place at the Jared Galleria of Jewelry in Collierville, Tennessee. Another three-member crew of robbers took diamonds and jewelry and attempted to flee. The total amount of retail loss of diamonds removed from the store,

---

[1] Re-posting means to post a picture/message that someone else has already posted on their account, usually by taking a screen shot of the item and posting that screen shot on one's own account. The original poster's username is usually seen in the re-posting.

combined with items recovered inside Jared's and/or disturbed within the display cases, totaled $726,817.

Newby also posted images on social media platforms, depicting not only cash and weapons, but also his association with and support for other members of the conspiracy.

This conspiracy is pervasive and relentless. After the Jacksonville arrests, another robbery was committed in Tennessee, and other co-conspirators were boasted about how losing soldiers would not stop them. This factor weighs heavily in favor of Newby's continued detention.

**2. The weight of the evidence against the defendant**

"Section 3142(g)(2) considers weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt." Stone, 608 F.3d at 948; see also Hazime, 762 F.2d at 37 (explaining that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

The weight of the evidence of Newby's dangerousness is strong. Newby can be linked to at least nine robberies or attempts. He admits leaving Michigan and traveling to various states no less than seven times with the intent to rob jewelry stores. He admitted to successfully robbing four stores, and preliminary cell phone tower analysis ties him to at least two more. Moreover, he admitted to playing an "important role" in the conspiracy by acting as the lookout, and then transporting the valuable, stolen property back to Michigan. The evidence shows that Newby was potentially a leader in a vast, nationwide conspiracy to steal hundreds of thousands of dollars' worth of diamonds and jewelry.

Considering the probable cause findings by the grand jury, resulting in the Second Superseding Indictment, Newby's criminal history, and the evidence presented at the hearing and

in filings, the Court finds that the evidence weighs heavily against Newby that he is a danger to the community.

3. **The history and characteristic of the defendant**

While the Court credit's Newby's family and community ties, length of residence in this community, and lack of an extensive criminal history, it finds that these factors do not sufficiently outweigh the other factors. The other factors establish the seriousness and dangerousness of the offense, Newby's risk of flight, and his danger to the community if he were to be released.

The smash and grab ring, with which Newby was indicted, was not a small-time, local operation. It operated consistently and efficiently for months across the country and yielded hundreds of thousands of dollars' worth of stolen jewelry. The actual robberies involved multiple individuals storming into a jewelry store while it was open to the public and using sledgehammers to smash open display cases and intentionally engaging in intimidating tactics to place the victims in fear for their lives.

Newby's ties to the community did nothing to prevent or deter his involvement in this criminal enterprise. Nor did they preclude him from repeatedly leaving the State of Michigan to commit robberies throughout the United States. Newby's involvement with this conspiracy ended, only after he was arrested in Georgia, fleeing from yet another attempted robbery.

The Court finds that Newby's criminal history and his repeated involvement with an organization involved in serial robberies throughout the United States weigh heavily against him.

4. **The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release**

The nature of all the robberies were rife with the possibility of serious harm to employees and bystanders—indeed, during the Jacksonville robbery, an employee was pushed to the floor and then dragged to another part of the store. Furthermore, Newby's suggestion that he reside at a relative's house with electronic monitoring is not a reasonable alternative to detention. Newby

would return to the same community where he lived while he was actively engaged in a smash and grab conspiracy, continually traveling across the country committing violent crimes. This is not realistic.

Nor is it realistic for him to be placed on a GPS tether. Electronic monitoring will only show pretrial services where Newby is, but it would do nothing to prevent him from being an ongoing danger to the community. The individuals involved in this conspiracy made good use of social media and cell phones, to plan and execute the robberies. A GPS tether would not prevent Newby from recruiting and planning more smash and grabs from the comfort of his home, contacting known and unknown co-conspirators, or making arrangements to flee.

### III. CONCLUSION

For all the reasons set forth above, the Government's evidence and proffer, the Court finds that the by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure Newby's appearance, and there is clear and convincing evidence that there is a serious risk that Newby will endanger the safety of another person or the community. Therefore, Newby's motion for pretrial release (Dkt. 195) is denied.

SO ORDERED.

Dated: November 18, 2020  
      Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge